JENKINS, ADMX., APPELLEE, *v.*
KRIEGER, SHERIFF, APPELLANT.

[Cite as Jenkins v. Krieger (1981), 67 Ohio St. 2d 314.]

(No. 80-1376—Decided July 22, 1981.)

316

*Mrs. Carole R. Turoff* and *Mr. Jack N. Turoff,* for appellee.

*Mr. John T. Corrigan,* prosecuting attorney, and *Ms. Karen A. Hassenzahl,* for appellant.

*Per Curiam.* The pivotal issue presented for review in this appeal is whether the Court of Common Pleas erred in granting defendant-appellant's motion for judgment notwithstanding the verdict or, in the event such order was found to be erroneous, mandating a new trial of the issues.

The trial court in its opinion accompanying the order granting the motion concluded that it had erred in failing to direct a verdict for the defendant at the close of plaintiff's evidence.[10]

Plaintiff's action against the sheriff for damages stemming from his alleged custodial negligence was predicated, necessarily, upon two sections of the Ohio Revised Code.

R. C. 341.01 provides:

"The sheriff shall have charge of the county jail and all persons confined therein. He shall keep such persons safely, attend to the jail, and govern and regulate the jail according to the rules and regulations prescribed by the court of common pleas."

R. C. 311.05 provides:

"The sheriff shall be responsible for the neglect of duty or misconduct in office of each of his deputies."

---

[10] The trial court wrote: "The Court has concluded that it erred in failing to direct a verdict for plaintiff [*sic*] at the close of plaintiff's evidence because the evidence fails to show negligence which can properly be charged to the defendant." It is obvious that the use of the word "plaintiff" was improvident, and that the court intended to state "defendant."

Despite its ultimate conclusion, in retrospect, that the plaintiff had failed to show negligence attributable to the defendant as sheriff, the trial court in its opinion rationalizing the granting of defendant's post-trial motion found "that the rule of evidence known as *res ipsa loquitur* applies with peculiar force in this case***."

It is axiomatic that *res ipsa loquitur* is a rule of evidence that permits the trier of fact to infer negligence on the part of the defendant from the circumstances of the injury. To warrant application of the rule a plaintiff must adduce evidence in support of two conclusions: "(1) [t]hat the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." *Hake* v. *Wiedemann Brewing Co.* (1970), 23 Ohio St. 2d 65, 66-67.

Beyond cavil, the proximate cause of Hicks' death was the fire in his cell. The trial court reasoned that although Hicks was confined in an isolation cell for good cause,[11] *i.e.,* enforcement of the rule against fighting, the cell contained no device by which help might be summoned in an emergency. This prompted the conclusion that the jury was free to infer negligence and, or, contributory negligence. Then, in order to exculpate the defendant from the legal consequences of the application of the doctrine of *res ipsa loquitur,* the court held that because the board of county commissioners had not provided the defendant any funds that would have enabled him to provide emergency alarm facilities and "another deputy or two" to afford attention to prisoners in isolation, the sheriff could not be held liable for Hicks' death.

The Court of Appeals rejected the trial court's rationale, declaring that it must fail first because of the mandate expressed in R. C. 341.01 that prisoners be kept safely and, secondly, because the facts of the case did not justify a conclusion that the adequacy of the sheriff's staff had any bearing

---

[11] The trial court wrote: "He was not there because of any capriciously unconsidered or malevolently motivated act of defendant or any deputy or by virtue of any acts amounting to a denial of any constitutional right."

upon whether there were negligent acts committed by deputies of the sheriff that proximately caused the death of Hicks. The court did not comment upon the propriety of the application of the doctrine of *res ipsa loquitur.*[12] It did conclude from its comparison of the evidence, however, that reasonable minds could have concluded, *inter alia,* that when Hicks was placed in the isolation cell, jail personnel failed to search his person as required by established policy; that, resultantly, they failed to discover the matches that were the cause of the fire;[13] and that had prompt attention been given when the fire was first noticed, Hicks would have lived.

R. C. 341.01 is a codification of the common law duty of a sheriff to employ ordinary care in keeping the prisoners confided to his custody and in protecting them from hazards that are, or should be, known to him. See *Justice* v. *Rose* (1957), 102 Ohio App. 482, 484-485. Whether the decision of the Court of Appeals has delineated a greater duty for a sheriff than that of exercising ordinary care for the safekeeping of his prisoners, or has implicitly made him an insurer of their safety by eliding the traditional criterion of foreseeability of the risk engendered by the environment in assessing the degree of care owed to Hicks—an argument advanced by appellant—is a question that we do not now decide because we agree with the Court of Appeals that there was sufficient evidence to enable the jury to conclude that the negligence of appellant's deputies contributed proximately to Hicks' death. Accordingly, we affirm that part of the judgment of the Court of Appeals reversing the trial court's order that judgment be entered for the defendant notwithstanding the verdict.[14]

[12] The defendant-appellant argues in this court that the trial court erred in instructing the jury on the law of *res ipsa loquitur.* However, the record demonstrates that counsel for the sheriff failed to object to the charge pursuant to Civ. R. 51(A). Resultantly, the asserted error was not preserved for review. *Yungwirth* v. *McAvoy* (1972), 32 Ohio St. 2d 285.

[13] Paradoxically, there is evidence in the record that the jail regulations promulgated by the Court of Common Pleas required the sheriff to supply cigarettes and tobacco to prisoners who did not have the means to procure such items for themselves.

[14] The Court of Appeals, in electing to reverse the trial court on the ground that there was palpable evidence of custodial negligence, avoided ruling upon the adequacy of proof by plaintiff of her claims based upon deprivation of constitutional rights. The court did, however, recognize the anomaly presented by the trial court's issuance of jury instructions on that issue and the statement in its opinion that it had granted a directed verdict for the defendant on such part of plaintiff's complaint.

We come now to consider the appellant's proposition that the Court of Appeals erred in reversing the order granting the motion for a new trial. Appellant's argument is that where, as here, reversal of a trial court's decision granting a new trial pursuant to Civ. R. 59 is sought on appeal,[15] an appellate court must find that the trial court abused its discretion in granting the new trial.

Where a trial court is authorized to grant a new trial for a reason that requires the exercise of a sound discretion, the order granting the new trial may be reversed only upon a showing of abuse of discretion by the trial court. *Yungwirth* v. *McAvoy* (1972), 32 Ohio St. 2d 285, 286; *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82, paragraph one of the syllabus.

In *Rohde, supra,* we noted the basic distinction, one of substantially universal recognition, between the action of a trial court in granting a new trial and its action in granting judgment notwithstanding the verdict. We stated, at page 93, quoting *Holland* v. *Brown* (1964), 15 Utah 2d 422, 426, 394 P. 2d 77:

" 'In appraising this action of the trial court, it is important to distinguish between the granting of a new trial and entering of a judgment notwithstanding the verdict. As to the former, the trial court is indeed endowed with a wide latitude of discretion in granting a new trial when he thinks the jury's verdict results in manifest injustice. This power is necessary to fulfill his function of maintaining general supervision over litigation to guard against miscarriages of justice which sometimes occur at the hands of juries.***' "

In the case *sub judice,* the trial court's decision on the motion for a new trial involved questions of fact. Consequently, the generally accepted rule is that a reviewing court should view the evidence favorably to the trial court's action rather than to the jury's verdict. The predicate for that rule springs, in part, from the principle that the discretion of the trial judge in granting a new trial may be supported by his having determined from the surrounding circumstances and atmosphere of the trial that the jury's verdict resulted in manifest injustice. *Id.* at 94.

---

[15] The trial court in its opinion stated: "On reviewing the entire cause the court has concluded that it must***[g]rant defendant's motion for a new trial in the sound discretion of the court as authorized by Civil Rule 59(D)."

Although in the opinion supporting its decision the trial court accented the conduct of trial counsel as a factor compelling the granting of the motion, a comparison of all the parts of the opinion supports the conclusion that the trial judge determined that, cumulatively, the aberrations, both procedural and substantive, that pervade this record mandated a new trial of the issues free from such influences.

This case falls within the ambit of *Rohde,* and the Court of Appeals erred in reversing the trial court's granting of a new trial without considering matters beyond misconduct of counsel and the use of improper tactics that would justify a new trial where the trial court was convinced a manifest injustice had been done.

The record persuades us that the original assessment of the magnitude and ultimate result of the errors that had occurred in a lengthy, sometimes heated trial of a case with an unusually bizarre scenario was correct, and that the trial court did not abuse its discretion in concluding that manifest injustice could be averted only by a retrial.

The judgment of the Court of Appeals is affirmed in part and reversed in part, and the cause is remanded to the Court of Common Pleas for a new trial.

*Judgment affirmed in part*
*and reversed in part.*

CELEBREZZE, C. J., SHANNON, MAHONEY, SWEENEY, LOCHER and HOLMES, JJ., concur.

C. BROWN, J., concurs in part and dissents in part.

SHANNON, J., of the First Appellate District, sitting for W. BROWN, J.

MAHONEY, J., of the Ninth Appellate District, sitting for P. BROWN, J.

CLIFFORD F. BROWN, J., concurring in part and dissenting in part.

I concur in the affirmance of that part of the judgment of the Court of Appeals reversing the trial court's judgment for defendant notwithstanding the verdict. The majority opinion well articulates the reasons for such affirmance.

I dissent from that part of this court's opinion reversing the Court of Appeals and affirming the trial court's grant of a retrial on plaintiff's claims. It is my view the decision to grant a new trial was based on a question of law only.

Therefore, I disagree with the standard of review used by this court, a standard only appropriate when the trial court orders a new trial due to questions of fact, such as when the jury verdict is against the manifest weight of the evidence. *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82, 94; *Yungwirth* v. *McAvoy* (1972), 32 Ohio St. 2d 285, 286. This was not the case here, despite the majority's bland assertion that "the trial court's decision on the motion for a new trial involved questions of fact."[16]

---

[16] The opinion of the trial judge contained the court's reasons for granting a new trial:

"Still, on reviewing this entire cause the court has concluded that it must:

"* * *

"2. Grant defendant's motion for a new trial in the sound discretion of the court as authorized by Civil Rule 59(D).

"The court has concluded that it erred in failing to direct a verdict for * * * [defendant] at the close of plaintiff's evidence because the evidence fails to show negligence which can properly be charged to defendant. The evidence completely fails to show that defendant sheriff had been provided any funds which would have enabled him to provide emergency alarm facilities and another deputy or two so that the attention given to visitors during visiting hours would not impair the attention given to prisoners in isolation during non visiting hours. * * * [T]he fault must rest on the Board of County Commissioners whose duty it is to make such provision. * * *

"Reluctantly, the Court finds it necessary to sustain defendants motion for a new trial, because counsel for plaintiff in the presence of the jury repeatedly stated assumptions of fact not based on evidence, inferred on several occasions that witnesses could not tell the truth about what they knew by reason of their employment and that opposing counsel were not honorable. * * * In addition, plaintiff's counsel disclosed the existence of the Sheriff's official bond, a matter completely irrelevant to the trial of the issues. Further, if defense counsel's similar conduct did not evenly balance that of plaintiff's counsel, it was substantial and this court must conclude that here the failure of counsel to concentrate on what the evidence truly tended to prove was so great it did not contribute to a just verdict."

The trial court also stated in its opinion as follows:

"Plaintiff argues vigorously that the judgment should not be disturbed because:

"* * *

"4. Defendant's allegation that in the circumstances there was a presumption that decedent died as a result of his own negligence was not overcome by defendant's evidence is incorrect because negligence is never presumed, a proposition with which this court concurs.

Where the grant of a new trial is based on the weight of the evidence requiring exercise of discretion of the trial judge, the controlling legal principle is contained in *Rohde* v. *Farmer, supra,* paragraph two of the syllabus, as follows:

"Where a new trial is granted by a trial court, for reasons which involve no exercise of discretion but only a decision on a question of law, the order granting a new trial may be reversed upon the basis of a showing that the decision was erroneous as a matter of law."

The fact that a question of law involves a consideration of the facts or the evidence, does not turn it into a question of fact or raise a factual issue; nor does that consideration involve the court in weighing the evidence or passing upon its credibility. This proposition is well expressed in *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215, paragraphs one and two of the syllabus:

"1. When a trial court has specified as the reason for granting a new trial its error in submitting an issue to the jury, the question before the appellate court on review is one of law, not of abuse of discretion; and the appellate court has the duty to decide whether, as a matter of law, the trial court erred in correcting itself by granting a new trial.

"2. The fact that a question of law involves a consideration of the facts or the evidence, does not turn it into a question of fact or raise a factual issue; nor does that consideration involve the court in weighing the evidence or passing upon its credibility."

---

"III.

"That defendant's alternative motion for a new trial is also unwarranted, in plaintiff's view because:

"(1) the allegation that 'to hold the sheriff personally liable for this verdict would be totally unjust' is irrelevant in light of Ohio's Revised Code Sections 341.01 and 311.05, a proposition in which this court concurs.

"(2) the verdict returned is not against the manifest weight of the evidence;

"(3) The $75,000 verdict is not excessive***.

"* * *

"Consequently, the jury was at liberty to infer negligence and/or contributory negligence or the lack of either as to both plaintiff's decedent and defendant, as in their judgment, might best advance the cause of justice.***"

These reasons all involve erroneous legal propositions and in no way concern the "sufficient evidence" or "weight of the evidence."

See, also, *Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137, 139, footnote 2.

In the case *sub judice,* the trial court granted a new trial because, in its view, the negligence could not be charged to defendant sheriff since he lacked sufficient funds to deal with emergencies of this type, and because counsel for both parties engaged in various alleged misconduct. These reasons do not involve the weighing of the evidence or exercise of discretion so as to constitute questions of fact.[17] The decision was based on a question of law, an order reversible on a showing that it was erroneous as a matter of law. *Rohde* v. *Farmer, supra,* paragraph two of the syllabus. The Court of Appeals correctly reversed the trial court's grant of a new trial, and was not required to consider matters beyond those stated by the trial judge as the basis for his decision. Accordingly, I believe we should adopt and follow the succinct and cogent analysis of Judge Day expressing the unanimous view of the Court of Appeals that the record does not warrant a new trial and that the verdict does not merit reversal because of misconduct of counsel.[18]

This court today, by apparently permitting trial courts to grant new trials solely because thay may be "convinced a manifest injustice has been done," gives carte blanche to trial judges to substitute their decision for that of the jury. Such an arbitrary and capricious state of affairs reduces the "inviolate" right to a jury trial in civil cases to a mere sham, a condition to which I am unalterably opposed.

---

[17] The trial court specifically and unambiguously ruled out questions of fact by stating in its opinion that plaintiff was entitled to a directed verdict on the issue of liability, that the issues of negligence and contributory negligence were for jury determination, and that the amount of the verdict was not excessive.

[18] The Court of Appeals addressed this issue as follows:

"The court below cited Civil Rule 59 (D) to sustain its position granting a new trial. It is evident from the trial court's comment that both sets of trial counsel, representing the plaintiff and the defendant, were guilty of unbecoming conduct suggesting a lack of professionalism. However, the record does not warrant a new trial. The verdict of the jury does not merit reversal because of the tactics and misbehavior of counsel on both sides. The court's instructions to the jury at the conclusion of the case cured any error which might have occurred in this area."